## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

**CIVIL ACTION NO. 3:12CV-00324-JHM**

**CARL J. NAVILLE**                                                                                         **PLAINTIFF**

v.

**MEDTRONIC, INC., MEDTRONIC SOFAMOR
DANEK USA, INC., JOHN E. HARPRING, M.D.,
NEUROSURGICAL INSTITUTE OF KENTUCKY,
MITCHELL J. CAMPBELL, M.D., COMMUNITY MEDICAL
ASSOCIATES, INC., d/b/a NORTON LEATHERMAN
SPINE CENTER, and NORTON HEALTHCARE, INC.**                              **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's motion to remand pursuant to 28 U.S.C. § 1447(c) [DN 9]. Fully briefed, the matter is ripe for decision.

### I.  BACKGROUND

On May 29, 2012, Plaintiff, Carl Naville, filed this action in the Jefferson Circuit Court. The Complaint asserts claims arising out of the posterior spinal surgery of Naville on February 9, 2004, at Norton Hospital in Louisville, Kentucky. Defendants, Dr. John Harpring and Dr. Mitchell J. Campbell performed the surgery during which Naville was implanted with Infuse, a bone graft device manufactured by the Medtronic Defendants. (Complaint ¶ 27.) On February 13, 2004, Naville presented to the emergency room suffering from severe neck swelling, difficulty breathing, shortness of air and difficulty speaking. He underwent emergency surgery, spent days on a ventilator in the ICU, and suffered from severe pain. Dr. Harpring and Dr. Campbell performed several additional surgeries on Naville. In fact, in Naville's subsequent posterior spinal fusion in November 21, 2005, they once again used Infuse. (Id. at ¶ 33.)

Plaintiff alleges that he was not informed prior to surgery that Infuse would be used in his

spine in an off-label or experimental manner or "that there were any risks specific to the use of Infuse in the lumbar spine." (Complaint ¶ 24-27.) Plaintiff alleges that Infuse was approved by the FDA in 2002 for only one specific operation which was an anterior single level fusion using an LT Cage and it was not approved for the posterior-approach lumbar spine surgery performed on Naville. Plaintiff claims that Dr. Harpring represented to Naville that the Infuse product was approved by the FDA for the cervical spine. (Id. at ¶ 26.) Plaintiff alleges that both Dr. Harpring and Dr. Campbell have financial ties to Medtronic and were involved in promoting the use of Infuse off-label, including through publishing inaccurate studies paid for by Medtronic. (Complaint ¶¶ 2-12, 21-22). Plaintiff asserts claims of fraud against all Defendants (Id. at ¶¶164-174) and negligent misrepresentation, strict products liability manufacturing and design defects, failure to warn, negligence, breach of implied warranty, and breach of express warranty against the Medtronic Defendants. (Id. at ¶¶ 175-210). Plaintiff also asserts claims against Dr. Campbell and Dr. Harpring for negligence. (Id. at ¶ 211-215). Finally, Plaintiff alleges claims against Defendants, Norton Hospital, Norton Leatherman Spine Center, Neurosurgical Institute of Kentucky, Dr. Harpring, and Dr. Campbell, for failure to obtain informed consent and negligent misrepresentation. (Complaint ¶¶ 216-232.)

On June 11, 2012, Defendants removed this action from the Jefferson Circuit Court to this Court on the theory that Plaintiff, a citizen of Indiana, had fraudulently joined Defendant Dr. Mitchell Campbell, a citizen of Indiana, in an effort to defeat federal jurisdiction. (Notice of Removal ¶ 14; Defendant Campbell Response to Motion to Remand ¶ 2.) Plaintiff now moves the Court to remand the case to the Jefferson Circuit Court.

## II. STANDARD OF REVIEW

At issue in this motion is whether Defendant Mitchell Campbell was fraudulently joined. "'Fraudulent joinder occurs when the non-removing party joins a party against whom there is no colorable cause of action.'" Walker v. Philip Morris USA, Inc., 443 Fed. Appx. 946, 952 (6th Cir. Oct. 31, 2011)(quoting Saginaw Housing Comm'n v. Bannum, Inc., 576 F.3d 620, 624 (6th Cir. 2009)). "The non-moving party's motive for joining the non-diverse party to the lawsuit is 'immaterial to our determination regarding fraudulent joinder.'" Id. (quoting Jerome–Duncan, Inc. v. Auto-By-Tel, L.L.C., 176 F.3d 904, 907 (6th Cir. 1999)). The burden is on the Defendants to show fraudulent joinder, and as with any dispute over removal, all doubts are resolved in favor of remand. Brierly v. Alusuisse Flexible Packaging, Inc., 184 F.3d 527, 534 (6th Cir. 1999); Alexander v. Electronic Data Sys. Corp., 13 F.3d 940, 949 (6th Cir.1994).

"To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." Coyne v. Am. Tobacco Co., 183 F.3d 488, 493 (6th Cir.1999). "Therefore the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." Probus v. Charter Communications, LLC, 234 Fed. Appx. 404, 407 (6th Cir. 2007)(internal citation omitted). See also Walker, 443 Fed. Appx. at 952. In making this determination, the Sixth Circuit recognizes that the district court may "pierce the pleadings and conduct a summary inquiry" to determine whether the a plaintiff's complaint has misstated or omitted "*discrete and undisputed facts*" that would determine the propriety of joinder. Walker, 443 Fed. Appx. at 953 (citation omitted). However, this standard of review is not as broad as suggested by Defendants. In adopting the approach articulated by the Fifth Circuit, the Sixth Circuit in Walker

3

stated in relevant part:

> [A]lthough the fraudulent joinder and Rule 12(b)(6) standards appear similar, the scope of the inquiry is different. For Rule 12(b)(6) motions, a district court may only consider the allegations in the complaint and any attachments. For fraudulent joinder, the district court may . . . "pierce the pleadings" and consider summary judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff. *Any contested issues of fact and any ambiguities of state law must be resolved in [the plaintiff's] favor.* The burden of persuasion on those who claim fraudulent joinder is a heavy one.

Id. (quoting Travis v. Irby, 326 F.3d 644, 648–49 (5th Cir. 2003)). Therefore, "[w]hen deciding a motion to remand, including fraudulent joinder allegations, we apply a test similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss." Casias v. Wal-Mart Stores, Inc., — F.3d —, 2012 WL 4096153, *3(6th Cir. September 19, 2012)(citing Walker, 443 Fed. Appx. at 952–54)).

### III. DISCUSSION

Plaintiff argues that the instant case should be remanded because the Medtronic Defendants have failed to prove the fraudulent joinder of Dr. Mitchell Campbell, the non-diverse forum-defendant. The Medtronic Defendants, on the other hand, contend that Dr. Campbell was fraudulently joined because Plaintiff's claims against Dr. Campbell are barred by the applicable one-year Kentucky statute of limitations. (Medtronic Defendants' Response at 4)

Under Kentucky law, an "action against a physician, surgeon, dentist, or hospital" for "negligence or malpractice" must be "commenced within one (1) year after the cause of action accrued." KRS § 413.140(1)(e). "The cause of action shall be deemed to accrue 'at the time the injury is first discovered or in the exercise of reasonable care should have been discovered.'" Elam v. Menzies, 594 F.3d 463, 466 (6th Cir. 2010)(citing KRS § 413.140(2)). In Kentucky, the

discovery rule can toll a statute of limitations.

The Kentucky Supreme Court has defined the discovery rule as follows: "'A cause of action will not accrue under the discovery rule until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct.'" Faulkner v. ABB, Inc., 2011 WL 1225697, *2 (W.D. Ky. 2011)(quoting Louisville Trust Co. v. Johns–Manville Prods. Corp., 580 S.W.2d 497, 501 (Ky.1979) (internal quotations omitted)). See also Elam, 594 F.3d at 466. The plaintiff must have a "basis for a claim before the statute of limitations begins to run." Elam, 594 F.3d at 466 (quoting Wiseman v. Alliant Hospitals, Inc., 37 S.W.3d 709, 712 (Ky. 2000)). The "knowledge necessary to trigger the statute is two-pronged; one must know: (1) he has been wronged; and (2) by whom the wrong has been committed." Id. "Although what the plaintiff actually knew often triggers discovery, the rule can also be satisfied by what the plaintiff should have known." Id. "In constructing knowledge, however, a court must give special consideration to the patient's perspective because '[o]ne who possesses no medical knowledge should not be held responsible for discovering an injury based on the wrongful act of a physician.'" Id. (citing Wiseman, 37 S.W.3d at 712–13).

Both Kentucky law and federal procedural law used in diversity cases specify that "when there is a disputed issue of fact as to when a plaintiff 'discovered or should have discovered' his cause of action, that factual issue should be resolved by the jury in cases in which the plaintiff has asked for a jury." Elam, 594 F.3d at 467. "Although the validity of the defense of statute of limitations is determined by the court as a matter of law, where 'there is a factual issue upon which the application of the statute depends, it is proper to submit the question to the jury.'" Id. (quoting Lynn Mining Co. v. Kelly, 394 S.W.2d 755, 759 (Ky. 1965); see generally 13 Ky. Prac. Tort Law

§ 10:39 (2009)). Naville filed his lawsuit on May 29, 2012, so if he discovered or should have discovered the injury before May 28, 2011, this action is barred.

The Medtronic Defendants maintain that Plaintiff's claims against Dr. Campbell are barred by the one-year statute of limitations and, as a result, Dr. Campbell was fraudulently joined. Defendants argue that Plaintiff knew of his alleged injury well over a year before he filed suit on May 29, 2012. As support, the Medtronic Defendants contend that Plaintiff knew he had spinal surgery on February 9, 2004, and that "[o]n February 13, 2004, a few days after the Infuse was implanted, Mr. Naville presented to the emergency room, suffering from severe neck swelling, difficulty breathing, shortness of air and difficulty speaking and underwent emergency surgery." (Complaint ¶ 30.) According to the Medtronic Defendants, the Plaintiff's alleged injury was readily apparent within a few days of his surgery. Further, citing Iqbal, the Medtronic Defendants argue that Plaintiff's mere assertion that he could not have known this information until November 2011 is a "naked assertion" devoid of further factual enhancement of why he didn't know. Iqbal, 556 U.S. at 678. Finally, the Medtronic Defendants contend that publically available documents discussing the potential risks of Infuse were available long before Plaintiff alleges he discovered the injury. (See July 1, 2008, FDA Online Public Health Notification regarding Recombinant Human Bone Morphogenetic Protein.) According to the Medtronic Defendants, extensive media coverage developed in 2008 concerning the alleged inappropriate relationship between Medtronic, physicians, and hospitals and concerning the lawsuits regarding the off-label uses of Infuse. (Medtronic Defendants' Response, Exhibit B.)

While Defendants have raised a potentially valid statute of limitations defense, the Court finds that questions of fact remain as to when Plaintiff discovered or should have discovered his

cause of action against Dr. Mitchell Campbell. Elam, 594 F.3d at 467. The fact that Naville had spinal surgery on February 9, 2004, required emergency surgery on February 13, 2004, and his recovery was marked by severe and painful complications does not, in itself, demonstrate that Naville discovered or should have discovered that he had suffered an injury from the off-label use of Infuse. Similarly, Medtronic Defendants' stated *belief* that Plaintiff should have discovered the reason for his injury prior to May 28, 2011, does not definitively demonstrate that Naville discovered or should have discovered the injury. As noted by the Sixth Circuit, "'often the patient cannot know whether the undesirable outcome is simply an unfortunate result of proficient medical care or whether it is the consequence of substandard treatment.'" Elam, 594 F.3d at 467 (quoting Harrison v. Valentini, 184 S.W.3d 521, 524 (Ky. 2005)). Additionally, the Medtronic Defendants have presented no evidence that Plaintiff was aware of the FDA Public Health Notification or the media coverage in question. Significantly, Plaintiff states in his Complaint that he "did not know, and could not have known by the exercise of reasonable diligence, until November 2011 that the off-label use of Infuse caused acute neck swelling and other injuries he suffered on February 13, 2004." (Complaint ¶ 31.)

Finally, contrary to Defendants' argument, the Court finds that Plaintiff has pled sufficient facts in support of the tolling of the statute of limitations. Both in the Complaint and the motion to remand, Plaintiff alleges that on June 1, 2011, the *Spine Journal* published a special edition dedicated to addressing serious patient safety concerns related to the use of Infuse in the spine. (Complaint at ¶ 119.) According to Plaintiff, the article informed the medical community of the inaccurate, Medtronic-funded studies promoting the off-label use of Infuse. (Id. at ¶¶ 120-121.) In his motion to remand, Plaintiff argues that the June 2011 publication date would be the earliest possible date for analyzing the statute of limitations. However, given that he is a lay person and that the *Spine Journal* is not a widely read publication for non-medical professionals, Plaintiff argues

7

that the June 2011 date would not be a reasonable date. Instead, Plaintiff asserts that he learned of the connection between his complications and Infuse in November 2011. (Plaintiff's Motion to Remand at 5, 6; Complaint ¶ 31.) Interestingly, the Complaint further reflects that Plaintiff continued to see Dr. Campbell and permitted him to perform several additional surgeries after the initial surgeries in 2004 supporting Plaintiff's representations that he did not know he had suffered an injury as a result of the negligence of Dr. Campbell. Based on Naville's lack of medical knowledge, his reliance on his physicians, and the conflicting evidence submitted by the parties, "a jury should decide when the statute begins to run in accordance with Kentucky law and the Seventh Amendment requiring a jury trial in civil cases at law." Elam, 594 F.3d at 471.

Accordingly, the Court finds that the Medtronic Defendants have failed to meet "the heavy burden of proving that there is not even arguably a reasonable basis for predicting Kentucky law might impose liability" on Dr. Campbell. Jones Body Shop, Inc. v. PPG Industries, Inc., 2012 WL 1984292, *2 (E.D. Ky. June 4, 2012). Given this decision, the Court need not address Plaintiff's remaining arguments in support of remand.

## IV. CONCLUSION

Resolving all contested issues of fact and ambiguities of state law in Plaintiff's favor, the Court finds that the Medtronic Defendants have not established that Dr. Campbell was fraudulently joined and, therefore, complete diversity is lacking and remand is proper. For these reasons, **IT IS HEREBY ORDERED** that Plaintiff's motion to remand [DN 9] is **GRANTED**. The case is remanded to the Jefferson Circuit Court.

Joseph H. McKinley, Jr., Chief Judge
United States District Court

cc: counsel of record
    Jefferson Circuit Court

October 30, 2012

8